WITHERS, Respondent, v. STEAMBOAT EL PASO, Appellant.

1. The master of a steamboat will be liable, under section 31 of the act concerning slaves (R. C. 1845, p. 1018), for transporting a slave from one place to another in this state without the consent of the owner, although he may not be aware of the fact of such slave being on board the boat, unless he use proper care to guard against such an occurrence.

2. The degree of care required of the master in such case is not "the strictest diligence," but such care as thoughtful and prudent men engaged in affairs equally hazardous to their own rights of property would take in order to protect themselves from loss and injury.

3. The deposition of a master of a steamboat, which had been seized under the act concerning boats and vessels for the transportation by the master thereof of a slave from one place to another in this state without the consent of the owner, and released upon the giving of a bond by the master with security, under the ninth section of said act, is inadmissible in evidence in favor of the master and his securities. Admissions and declarations made by the master are admissible in such case in evidence against him.

*Appeal from Ray Circuit Court.*

This was a proceeding, under the act concerning boats and vessels, against the steamboat El Paso, to recover damages for the wrongful transporting upon said boat, by the master thereof, of a slave of plaintiff, named Ann, from the city of Lexington to the city of St. Louis. The boat was seized, and, upon the giving of bond by the master, Thornburgh, with security under the ninth section of the act concerning boats and vessels, was released. Thornburgh, the master, answered, denying all the material allegations of the petition. Upon the trial, the plaintiff was permitted, against the objection of Thornburg, to introduce in evidence declarations of Thornburg, the master, (made before the institution of this suit,) amounting in substance to admissions that the slave Ann had been transported

upon the El Paso from Lexington to St. Louis. A deposition of Thornburgh, the master, was offered in evidence, but was ruled out upon the objection of plaintiff. The court, upon its own motion, gave the following instruction: "To constitute a transportation of the slave by the master of the boat which would render the boat liable, such transportation must be the act of the master of the boat; if the slave was transported on the boat without the knowledge or consent of the master of the boat, and the master of the boat could not by the exercise of the strictest diligence as master of the boat have ascertained that the slave was being transported on the boat, then the boat is not liable; but if the master knew the slave was transported and did not prevent it, or if, by the exercise of the strictest diligence as master of the boat, he could have discovered and prevented such transportation, and he failed to do so, and the slave was transported on the boat, then the boat is liable."

Other instructions were given and refused, but it is unnecessary to notice them. The jury found for plaintiff, and judgment was rendered against Thornburgh and his securities on the bond.

*W. Adams*, for appellant.

I. The declarations or admissions of Thornburgh, the master of the boat, made subsequent to the supposed transportation of plaintiff's slave, were inadmissible as evidence, first, because he had no power or authority, after the transaction, to bind the boat by any admission or declaration (see R. C. 1845, p. 182, 186; 1 Greenl. Ev. § 113; Price v. Thornton, 10 Mo. 140; Rogers v. McCune, 19 Mo. 529); and secondly, because Thornburgh himself was a competent witness, and what he might have stated to others was mere hearsay.

II. Thornburgh was a competent witness for the boat, and the court erred in excluding his deposition. Although he was master of the boat, he was not an owner, and did not become a part owner till long after the slave was taken off. The fact of his giving bond for the value of the boat did not render him incompetent. He was only individually liable. The suit was not de-

fended for his benefit, and he was competent under the new code of practice. (See Sess. Acts, 1849, p. 99, 100; Steamboat Madison v. Mills, 14 Mo. 360; same v. same, 18 Mo. Mo. 99; 19 Mo. 505.)

III. This suit is founded on the 32d section of Article I. of the act concerning slaves (R. C. 1845, p. 1018). It is a penal statute, and ought to be strictly construed; and to render a boat liable under this statute, the slave must have been transported with the knowledge or by the consent of the master, commander or owner; and it was not necessary in such case that any greater care or precaution should be used than a prudent man would exercise in the management of his own business. A party might be liable at common law when he would not be liable under the statute. The assent of the mind is necessary to constitute a violation of a penal or a criminal statute. (Price v. Thornton, 10 Mo. 140.)

*Napton*, for respondent.

I. Capt. Thornbugh was not a competent witness, because, first, he was a party to the suit. He was principal in the bond by which, under the act concerning boats and vessels, the boat was discharged. A suit which is to affect the interest of any one other than the party complaining, implies that there is a party defendant. Boats and vessels, by a sort of legislative personification, are made to assume this position; but the steamboat El Paso was no longer a defendant in this case. After she was discharged under the bond, she was totally dismissed from the jurisdiction of the court, and no more to be affected by any thing done or determined by that court than if no such suit had never been instituted. If Capt. Thornburgh was not technically a party, he was, beyond all question, the person for whose benefit the suit was defended. He is the person primarily responsible in this action.

II. Capt. Thornburgh's admissions were evidence against him. The declarations admitted by the court were properly considered as part of the *res gestæ*. They were admissible in

evidence against Capt. Thornburgh as party defendant, whether parts of the *res gestæ* or not.

III. One of two constructions must be given to the 31st section of Art. I. of the act concerning slaves (R. C. 1845, p. 1018). In Price v. Thornton, (10 Mo. 140,) it is intimated, although the question was not raised by the record, that the boat was not liable under this section unless there was an assent actual or implied on the part of the master to the transportation of the slave; and this is the construction adopted by the circuit judge in the case at bar. Later opinions of the Supreme Court seem to throw doubts as to the propriety of this *obiter dictum* in Price v. Thornton, and the general impression is that the act was designed and ought to be construed to punish the master or owner for the act of transportation alone, without regard to the question of care or diligence. It is not necessary to inquire here which is the proper construction. If the judge of Ray county erred in this, his error was in favor of the boat; and if the question of diligence is to determine the responsibility of the master, the court ought to require the *strictest diligence;* and this seems to be the opinion of this court in Eaton v. Vaughn. In fact the circuit judge adopted the very language of this court in Eaton v. Vaughn.

LEONARD, Judge, delivered the opinion of the court.

The main question here (and indeed the only one of any difficulty,) is as to the propriety of the instruction given by the court in reference to the degree of care required of the captain in order to exempt him from liability under the statute against transporting a slave from one place to another, in this state, without the consent of the owner. The defendant insisted that such care as prudent men take in the management of their own affairs was all that was required; but the court instructed that " the boat was liable if her master could have discovered and prevented the act by the ' strictest diligence.' "

In Vaughn v. Eaton, (9 Mo. 743,) which was a common

law action of trespass against the captain of a boat for carrying off the plaintiff's slave, the Circuit Court instructed that, in order to charge the defendant, it was not necessary that he should have known that the boy was a slave, nor was it an excuse that he acted in good faith and used reasonable diligence to guard against being imposed upon, and this judgment was affirmed here upon appeal. But in Price v. Thornton, (11 Mo. 140,) which was a common law action on the case against the owners of the boat for the master's negligence in carrying off the plaintiff's slave, under the belief that he was a freeman, there is an *obiter dictum* of the judge who delivered the opinion of the court, to the effect, that, in order to bring the transaction within the act of 1840, (the original statute upon this subject, and which is similar in this particular to the existing statute,) the wrong must have been *wilfully* perpetrated. It seems however, in the present case, to have been *assumed* at the trial, that, although the transportation of the slave from Lexington to St. Louis was effected without the captain's being aware of it, yet it was to be imputed to him as his act, so as to subject him to the penalty of the statute if he could have discovered and prevented it by the use of proper care in navigating his boat; and the point contested was, as to the *degree* of care required of him, whether the greatest care that it was possible to have used was necessary, or whether ordinary diligence was sufficient.

Thibaut, the eminent modern German jurist, in the general part of his System of Law, (ch. 3, div. 1, sect. 140, Lindley's translation, 129,) distinguishes all transactions forbidden by law into four classes—*accidental*, when they result from natural causes, over which the human will has no control; *voluntary but not imputable*, which the person might have prevented, but of the illegality of which he could not have been aware; *negligent*, when performed neither with an intention of disobeying the law, nor with a morally wrong intention, but under such circumstances that a knowledge of the illegality of the act might have been attained; and *wilful*, when committed by

one who, having a knowledge of the law, disobeys it, and with a morally wrong intention. Without stopping to inquire whether this classification embraces every prohibited transaction, or indeed whether it is founded altogether upon distinctions that are recognized in our law, it is obvious that the acts included in the first class, not being the result of the human will, can not be imputed to any person as his act; and in reference to the three remaining classes, we remark that, if the girl was transported here under such circumstances that it was utterly impossible for the captain to have known that she was on the boat, (if, indeed, such a state of circumstances can be imagined,) it ought not, we think, to be imputed to him as a violation of the statute; but yet we do not deem it necessary for this purpose that he should have been actually aware of the fact. It is sufficient, although he had no actual knowledge, that he could and would have known it, if he had navigated his boat with proper care to guard against such an occurrence. In our opinion, the transportation of the girl on the boat, although not wilfully committed, must yet, in the construction of this statute, be imputed to the captain as his act, if he might have attained a knowledge of the fact by observing proper care. This construction is warranted by adjudged cases. An act passed in New Jersey before the abolition of slavery there provided that, "if any one should be found guilty of conveying away a slave, whereby he should be lost to the owner, such person should pay to the owner the value of the slave lost;" and Gibbons v. Morse, (2 Halst. 253,) was an action founded on the statute against the owner of the ferry-boat between Elizabethtown and New York, to recover the penalty incurred by the defendant's ferryman in taking the plaintiff's slave across the river, and the owner of the ferry was held liable, although the wrongful act was not *wilfully committed;* but at the same time, it was declared that it should have been otherwise, if the boy had entered the boat by stealth and so concealed himself that he could not have been discovered in the ordinary management of the boat. This construction, too, is necessary in or-

der to make the statute effectual for the purpose for which it was enacted. If we confine the penalty to cases where the master *wilfully* transports a slave from place to place without the owner's consent, and exclude from the statute the much larger class of cases where slaves are enabled by the carelessness of a boat's officers to conceal themselves on board, and in this way effect their escape without the knowledge of the master of the boat, we shall render the statute almost a dead letter, instead of making it what it was intended to be, a substantial protection to the slave property of our citizens residing in the vicinity of our large rivers. And, although this is a penal statute, the construction we adopt is consistent with the established rules of law upon this subject. In Bac. Abr. (tit. "Statute," let. I, 10,) it is said that "the statute of Malbridge against committing waste is penal, yet it has been construed liberally," and that "if the extending of a penal statute by an equitable construction be more advantageous than prejudicial to the greater part of the people, it may by the rules of law be so extended." It is also to be remarked, that the penalty here inflicted is given to the injured party as a redress for the private injury sustained, and not imposed as a punishment for a public offence ; and although, as a general rule, to constitute a crime against the public, there must be both a vicious will and an unlawful act resulting from the vicious will, it is otherwise in reference to private injuries, where in most cases the intention is immaterial.

Coming down now to the matter discussed at the trial, and assuming that the alleged transportation of the slave occurred without the knowledge of the master of the boat, the question is, under what circumstances it ought nevertheless to be imputed to him as his act, so as to subject him to the penalty of the statute. In the construction of the statute, we have seen that the fact must be imputed to him, although he was not actually aware of it, if he might have known and avoided it by the use of *proper care* in the navigation of his boat, and we think that *this proper care* is such as prudent men use in conducting

their own affairs, hazardous to their own rights of property, in order to protect themselves from loss or injury. It is not sufficient that the master used such care as men of less than ordinary prudence take when engaged in their own affairs ; nor is it enough that he used such care even as prudent men are but too frequently satisfied with, when the danger is to the property of others, and not to their own ; nor will it be deemed sufficient that he used such care even as prudent captains generally use to guard against these escapes, if the care these persons take be not in the judgment of men in general proportionate to the probability of injury to others. Our law prohibits the captain of a boat from transporting a slave upon it without the owner's consent, and whenever such an event occurs, it is imputable to the master of the boat, although not aware of it, if he gave occasion to it by the want of reasonable care in the navigation of his boat to prevent such an occurrence ; and, although the great practical difficulty is in determining what is sufficient care in the particular case, the proper standard for the government of the jury is, such care as thoughtful and prudent men, engaged in affairs equally hazardous to their own rights, generally take in order to prevent what they are doing from resulting in harm to themselves. In order to exempt the master from the penalty of the statute, the law does not exact from him the greatest possible diligence—all that we may imagine could have been done to have prevented the escape of the girl—but only such care as thoughtful and prudent persons would have taken in navigating a boat in the midst of a slave population, to prevent the escape of slaves upon it, if the property endangered had belonged to themselves, instead of belonging to others.

In Vaughn v. Eaton, it was held that the master of the boat was liable, although he used *reasonable diligence* to prevent being imposed upon ; yet it is to be remarked, that the question there was as to a common law liability, and not in reference to the construction of a statute, and the act there complained of being the very act contemplated by the master of the boat, although he was not aware that the person transported as

a passenger was a slave, and resulting in a direct and immediate injury to the plaintiff, constituted a good cause of action in trespass ; and the rule of the common law, laid down in Weaver v. Ward, (Hobart, 390,) was applicable to the case : " No man shall be excused of a trespass except it may be adjudged utterly without his fault, as if a man by force take my hand and strike you ; or, if the plaintiff had run across the defendant's piece, when it was discharging ; or it had otherwise appeared to the court that it had been inevitable, and that the defendant had committed no negligence to give occasion to the hurt." Here, however, the question is as to the liability of the party to a statute penalty ; and the instruction having assumed that the removal of the slave was effected without the knowledge of the captain, we are not called upon to determine whether the rule that was applied in the case of Vaughn and Eaton would have been equally applicable in the case, if the suit had been for the penalty given by the statute, instead of for the common law redress. It may be, too, that there is a difference in the two classes of cases, even in the application of the statute to them, and that where the transportation of the person is the very act contemplated by the master of the boat, although he is not aware of its illegality, he can not escape the statute penalty unless he were *utterly without any fault*, or, in other words, *unless it was impossible for him to have known that the person transported was a slave* ; although it may be otherwise, where the negligence of the master, in navigating his boat, merely gives occasion to the injury by the facility it affords for the involuntary transportation of the slave upon the boat. If the master knowingly transport the person without being aware that he is a slave, the act, it may be, ought nevertheless to be imputed to him as his act within the meaning of the statute, unless it was utterly impossible for him to have been aware of the wrong he was committing, although only the ordinary care of prudent men may be required, in order to take the case out of the statute, where the slave gets upon the boat by stealth and is thus transported without the knowledge of the

captain.   In the one case it may be thought that, as the master contemplates the very act prohibited by the statute, he acts at his own peril, and must answer according to the statute for the act thus voluntarily committed if it turn out that he was imposed upon as to the condition of the person transported, although in the other case he would only be required to use that degree of care in the navigation of his boat that would become a prudent and thoughtful man under similar circumstances, in order to avoid the incurring of a similar injury to his own property.   But however this may be, we confine our decision to the facts of the present case; and the view we have taken in reference to the liability of boat owners and masters under our statute, seems to be the same that was taken in South Carolina, in Ellis against Welch, (4 Rich. 468,) as to the liability of a ship's captain at common law for having negligently given passage to the plaintiff's slave from Charleston to Philadelphia under the belief that he was a free person.   It was insisted that, although the captain acted in good faith, he was guilty of negligence in receiving the boy as a passenger upon the proof furnished that he was free, and the question was as to standard of care and caution that the law exacted of the captain on that occasion.   The language of one part of the charge to the jury required "the utmost care and diligence;" but the appellate court, taking the whole charge together, declared that this meant "the utmost that, under like circumstances, the jury would exact from a prudent man engaged in a business hazardous to other people's rights of property," and the judgment was affirmed.   And this is substantially the degree of care we require from the masters of boats, in order to exempt them from the penalty of the statute, when the transportation occurs without their knowledge.   They are engaged in a business very hazardous to slave property, and it is not too much to exact of them, in the construction of this statute, that degree of care to prevent the escape of slaves on their boats that prudent men would take in conducting their own affairs, to guard against similar injuries to their own property,

and that honest men feel themselves bound to take in reference to the property of others. But the instruction of the court went beyond this ; the care exacted was " the strictest diligence ;" and although these words, when taken in connection with other instructions, might not import, as in the South Carolina case, more than such care as prudent men take in the transaction of a hazardous business, yet there was nothing here to prevent them from being understood by the jury in their largest sense, so as to include every imaginable degree of care that would have tended to the discovery and prevention of the act complained of ; and the refusal of the instruction asked by the defendant would seem to indicate that they were used by the court in this sense. We shall therefore reverse the judgment on this ground, that the case may be re-tried with a more perfect understanding of the law that we deem applicable to the case.

The other two points made in the case may be disposed of in a few words. The penalty of the statute is inflicted on the captain for his own act, and the boat is made responsible as an artificial person, for the better security of the party injured. And, although the boat was originally sued in the present case, yet under the provision of the 9th section of the act concerning boats and vessels, (R. C. 1845, p. 180,) the captain and his securities have been substituted as defendants in the place of the boat, which was thereby released, and the judgment to be recovered will be rendered against these substituted defendants, pursuant to the 21st section of the act, and we may therefore treat the case, in reference to the deposition and admissions of the captain, as if the suit had been originally instituted against him. Under this view of the matter, the captain's deposition was properly excluded when offered in behalf of the defendants, and his declarations, properly admitted against him, not as part of the *res gestæ*, but as the admissions of the real defendant, the party primarily liable for whatever may be recovered in this suit.

Judge Ryland concurring, the judgment is reversed, and the cause remanded.